**Exhibit 1**

```
JEFF FINE
Clerk of the Superior Court
By Miguel Marin, Deputy
Date 08/21/2020 Time 16:37:14
Description            Amount
--------- CASE# CV2020-010151 --------
CIVIL NEW COMPLAINT    333.00
---------------------------------------
TOTAL AMOUNT           333.00
       Receipt# 27917158
```

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Jeffrey A. Silence (029143)
jxs@jaburgwilk.com
Alden A. Thomas (031900)
aat@jaburgwilk.com

Attorneys for Plaintiff

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

MATHEW HORODNER,

Plaintiff,

v.

MIDWESTERN UNIVERSITY,

Defendant.

Case No. CV2020-010151

**COMPLAINT**

Plaintiff Mathew Horodner files this complaint and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Mathew Horodner is an Arizona citizen who resides in Maricopa County.

2. Midwestern University ("Midwestern") is an Illinois nonprofit corporation with its principal place of business in Maricopa County, Arizona.

3. This Court has jurisdiction over this matter under A.R.S. § 12-123.

4. Venue is proper in this court because the acts and omissions giving rise to Horodner's claims occurred in Maricopa County.

21378-21378-00001\\AAT\\AAT\\4170192.1

# GENERAL ALLEGATIONS

## I. Background

5. Horodner is a former Midwestern student.

6. Horodner suffers from several disabilities, including Generalized Anxiety Disorder, Bipolar Disorder, Asperger's Disorder, Reading Disorder, and Social Phobia.

7. Horodner has excelled as a student when provided appropriate accommodations for his disabilities.

8. As just a few examples of Horodner's academic accomplishments:

   a. In 2012, he graduated from the University of Phoenix with a Master's of Science in Psychology and a 4.0 GPA; and

   b. In 2016, his score on the Pharmacy College Admissions Test placed him in the top 6% in chemical processes and the top 8% in quantitative reasoning when compared to his peers' scores.

9. Horodner was well qualified to participate in Midwestern's pharmacy program.

## II. Horodner's Experience at Midwestern

10. Horodner applied and was accepted to Midwestern's pharmacy program and began taking classes in the summer of 2017.

11. In or around April 2017, before classes began, Horodner informed the Office of Student Services of his disabilities and requested extra time to take all tests, exams and quizzes and an isolated room to do his work with little or no distractions. Horodner provided a letter from his psychologist, Dr. J.R. Evans, in support of his request. The documents Horodner submitted with his request are attached as **Exhibit 1**.

12. Horodner excelled his first semester, receiving A's and B's in his courses.

13. However, things took a turn for the worse when he took Pharmaceutics II, which included a lab component.

2

14. The labs were taught by instructors who attempted to explain materials to groups comprised of four – six students. The instructors often rushed through the material, and Horodner had difficulty seeing and hearing them. Horodner's disabilities impeded his ability to fully grasp the material, which led him to fail the course.

15. As a result, Horodner was placed on an "extended track," which precluded him from taking core classes for a year.

16. On April 20, 2018, Horodner requested an accommodation for his disabilities so that he could successfully grasp the material on his second attempt. Specifically, he requested additional time to complete his labs and time to consult with an instructor. The email Horodner sent to Shannon Sesterhenn and Shawn Tennant requesting this accommodation is attached as **Exhibit 2**.

17. The requested accommodation was reasonable given the nature of Horodner's disabilities and consistent with the accommodation that had already been granted to him for his exams. Furthermore, Midwestern routinely provided tutors to other students who were failing courses.

18. However, Midwestern refused to provide the requested accommodation. *Id.*

19. In so doing, Midwestern violated its "Americans with Disability Policy" and "Equal Opportunities for All Policy." These and other relevant policies are attached as **Exhibit 3**.

20. In the summer of 2019, Horodner began suffering from lightheadedness, vertigo, disequilibrium and basilar migraines, so he began seeing a neurologist. Horodner's symptoms were so severe that he was forced to miss one day of his introductory rotation.

21. Horodner reported to Dr. Tennant that he was suffering from conditions that made it difficult for him to concentrate. He also reported that he was suffering from

3

migraines to the supervisor of his introductory rotation. Although Horodner's other disabilities were well documented, Midwestern made no efforts to confer with Horodner or to provide him an accommodation.

22. In late September 2019, Horodner was the victim of a theft. The iPad that he used for his coursework was stolen. The theft was reported to the police.

23. Horodner reported the theft and the health issues he was experiencing and requested an extension of a few days to take an Integrated Sequence IV final exam that was scheduled on September 30, 2019. The email Horodner sent to his professor requesting an extension is attached as **Exhibit 4**.

24. Pursuant to Midwestern's "In-Progress Grade" policy, students may be assigned in-progress grades when extenuating circumstances, such as illness, make it necessary to extend the grade completion period beyond ten days. *See* **Exhibit 3**.

25. Notwithstanding this policy, Midwestern refused to provide Horodner an extension of a few days, and he was forced to take the final exam just one day later despite the fact that he was suffering from serious health issues and disabilities that rendered him mentally incapacitated.

26. As a result of Midwestern's refusal to accommodate Horodner's disability and grant his requested extension of a few days pursuant to its own policies, Horodner failed the final exam and was assigned an in-progress grade.

27. Under the "In-Progress Grade" policy, Horodner had to a full quarter to complete the course without having to notify the Registrar. *See* **Exhibit 3**.

28. Despite his request for an extension to take the comprehensive course re-examination to pass the course due to his medical conditions and disabilities pursuant to this policy, Horodner was forced to re-take it just a day and a half later. Dr. Sesterhenn represented that if Horodner did not take the comprehensive course re-examination within this time period, he would automatically fail the course.

4

29. Pursuant to Midwestern's "Medical Leave" policy, Horodner requested a medical withdrawal, which was denied. *See* **Exhibit 3**.

30. With no other options, Horodner was then forced to withdraw from Midwestern as a student.

### III. Horodner Files a Complaint for Discrimination

31. In December 2019, Horodner filed a discrimination claim with the U.S. Department of Education – Office of Civil Rights ("OCR").

32. Specifically, Horodner reported that Midwestern failed to accommodate his disabilities, including providing an extension to take his comprehensive course re-examination and failing to grant him a medical withdrawal. Emails confirming the substance of Horodner's complaint are attached as **Exhibit 5**.

### IV. Horodner Suffers Damages

33. As a direct and proximate result of Midwestern's egregious conduct, Horodner has suffered damages, including tuition he paid to Midwestern along with other consequential damages. Midwestern's actions have also prevented Horodner from advancing his career.

34. As a direct and proximate result of Midwestern's wrongful and unlawful conduct, Horodner has also suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to his reputation, and loss of enjoyment of life.

### V. Horodner Attempts to Resolve His Claims with Midwestern

35. On June 15, 2020, the undersigned sent a demand letter to Midwestern in an attempt to resolve Horodner's claims short of litigation.

36. Despite numerous representations that Midwestern would timely respond to the undersigned's letter, Midwestern did not respond until August 5, 2020.

5

37. Therein, Midwestern represented it had no interest in resolving Horodner's claims.

38. As a result, Horodner was forced to retain the undersigned counsel and incur fees and expenses associated with pursing this litigation.

## COUNT ONE
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

39. Horodner incorporates by reference all above allegations fully set forth herein.

40. Under the ADA, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41. Horodner is disabled. Generalized Anxiety Disorder, Bipolar Disorder, Asperger's Disorder, Reading Disorder, and Social Phobia are "disabilities" under the ADA. 42 U.S.C. § 12102(1). Horodner also suffered from temporary disabilities, including migraines, vertigo, and disequilibrium, while he was a student at Midwestern.

42. Midwestern is a place of "public accommodation." *See* 42 U.S.C. § 12181(7)(J).

43. Midwestern is required to administer examinations "**so as to best ensure** that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure." 28 C.F.R. § 36.309

6

44. Horodner was qualified for Midwestern's pharmacy program and would have successfully completed the program with reasonable accommodations.

45. "Discrimination" includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

46. Midwestern discriminated against Horodner when it failed to provide accommodations for his disabilities, including refusing to provide extra time to complete his labs, additional time with a lab instructor, an extension to complete an exam, and a medical withdrawal to treat his disabilities.

47. As a proximate result of Midwestern's actions, Horodner has suffered economic damages and severe emotional distress.

48. Horodner filed a discrimination complaint with the OCR and has completed all actions required for him to proceed with his ADA claim.

## COUNT TWO
## DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

49. Horodner incorporates by reference all above allegations fully set forth herein.

50. Under the Rehabilitation Act:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

7

51. Horodner is disabled. Generalized Anxiety Disorder, Bipolar Disorder, Asperger's Disorder, Reading Disorder, and Social Phobia are "disabilities" under the Rehabilitation Act. 29 U.S.C. § 705(9). Horodner also suffered from temporary disabilities, including migraines, vertigo, and disequilibrium, while he was a student at Midwestern.

52. Horodner was qualified to participate in Midwestern's pharmacy program.

53. Midwestern's pharmacy program is a "program or activity," which includes all operations of "a college, university, or other postsecondary institution, or public system of higher education." 29 U.S.C. § 794(b)(2)(A).

54. Horodner could complete his coursework with reasonable accommodations for his disabilities.

55. Midwestern discriminated against Horodner when it failed to provide reasonable accommodations for his disabilities, including refusing to provide extra time to complete his labs, additional time with a lab instructor, an extension to complete an exam, and a medical withdrawal to treat his disabilities.

56. As a proximate result of Midwestern's actions, Horodner has suffered economic damages and severe emotional distress.

## COUNT THREE
## BREACH OF CONTRACT

57. Horodner incorporates by reference all above allegations fully set forth herein.

58. Midwestern's academic policies form a contract between Midwestern and Horodner.

8

21378-21378-00001\\AAT\\AAT\\4170192.1

1  59. As set forth herein, Midwestern breached the terms of that contract, including Midwestern's Equal Opportunities for All, Americans with Disabilities Act, Medical Leave, and In-Progress Grade policies.

60. As a direct and foreseeable result of Midwestern's breach of its policies, Horodner suffered, and continues to suffer direct and consequential damages.

## DISCOVERY TIER

61. Horodner requests that this case be assigned to Tier 3 for discovery purposes.

## JURY TRIAL DEMAND

62. Horodner demands a trial on all claims set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Horodner requests a judgment against Midwestern as follows:

A. For a declaration that Midwestern violated the ADA;

B. For a declaration that Midwestern violated the Rehabilitation Act;

C. For a declaration that Horodner is a student in good standing at Midwestern;

D. For an order requiring Midwestern to remove all references of Horodner's withdrawal from Midwestern from his student records;

E. For compensatory damages;

F. For consequential damages;

G. For punitive damages in an amount sufficient to punish Midwestern for its wrongful conduct;

H. For prejudgment interest at the highest rate from the date due until the date of Judgment;

I. For reasonable attorney's fees pursuant;

J. For costs;

9

21378-21378-00001\\AAT\\AAT\\4170192.1

K.    For interest on the foregoing amounts at the highest legal rate from the date of Judgment until paid; and

L.    For such other and further relief the Court deems proper and just.

DATED this 21st day of August, 2020.

                                    Jaburg & Wilk, P.C.

                                    */s/ Alden Thomas*
                                  Jeffrey A. Silence
                                  Alden A. Thomas
                                  Attorneys for Plaintiff

JABURG | WILK
Attorneys at Law

21378-21378-00001\\AAT\\AAT\\4170192.1

10