**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mathew Horodner,<br><br>                    Plaintiff,<br><br>v.<br><br>Midwestern University,<br><br>                    Defendant. | No. CV-20-01800-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant Midwestern University's motion to dismiss Plaintiff Mathew Horodner's complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 6). The Motion is fully briefed (Doc. 13; Doc. 14), and the Court now rules.[1]

**I.     BACKGROUND**

For purposes of this motion, the Court accepts all well-pleaded factual allegations in the complaint as true and construes the complaint in the light most favorable to Horodner. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The Court also considers the documents attached to the complaint because their "authenticity . . . is not contested," and the complaint "necessarily relies" on them. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

---

[1] Because both parties submitted memoranda discussing the law and facts in support of their positions and oral argument will not aide the Court's decisional process, the request for oral argument is denied. *See, e.g.*, *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Invs. Grp., Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

In 2017, Horodner applied and was accepted to Midwestern University's College of Pharmacy in Glendale. (Doc. 5-1 at 3). Horodner suffers from several disabilities, including Generalized Anxiety Disorder, Bipolar Disorder, Asperger's Disorder, Reading Disorder, and Social Phobia. (*Id.*). Before he began taking classes in the summer of 2017, Horodner informed Midwestern's Office of Student Services of his disabilities. (*Id.*). Horodner requested extra time to complete exams and quizzes and an isolated room in which to work without distraction, and Midwestern granted this request. (*Id.* at 3, 4).

During his first semester, Horodner earned As and Bs in his courses. (*Id.* at 3). His academic performance began to worsen, however, when he took Pharmaceutics II, which included a lab component. (*Id.*). Horodner alleges that during the lab component, "[t]he instructors often rushed through the material, and [he] had difficulty seeing and hearing them." (*Id.* at 4). Horodner failed the course, and Midwestern placed him on an "extended track," which precluded Horodner from taking core classes for a year. (*Id.*).

On April 20, 2018, Horodner requested additional accommodations for his second attempt at the course. (*Id.*). Specifically, he requested additional time to complete his labs and time to consult with an instructor. (*Id.*). Midwestern denied this request, stating that additional lab time would be an "academic modification" that would provide Horodner with an unfair advantage over his peers. (*Id.* at 4, 21).

In the summer of 2019, Horodner began suffering from lightheadedness, vertigo, disequilibrium, and basilar migraines. (*Id.* at 4). Due to symptoms from these conditions, Horodner missed one day of his introductory rotations. (*Id.*). Horodner reported to Midwestern that "he was suffering from conditions that made it difficult for him to concentrate," and he reported that he was suffering from migraines to the supervisor of his introductory rotation. (*Id.* at 4, 5). The Complaint does not allege that Horodner requested additional accommodations to address these issues at that time.

In September 2019, the iPad that Horodner used for his coursework was stolen. (*Id.* at 5, 29). He reported the theft and the health issues he was experiencing to Midwestern and requested an extension of "a few days" to take his Integrated Sequence

IV final exam. (*Id.*). Midwestern denied this request. (*Id.* at 5).

Horodner failed the final exam and was assigned an "in-progress" grade. (*Id.*). He requested an extension to take the comprehensive course re-examination, which Midwestern denied. (*Id.*). Horodner then requested a medical withdrawal under Midwestern's Medical Leave policy, which Midwestern also denied. (*Id.* at 6). Horodner then withdrew from the university. (*Id.*).

Horodner later filed the instant action alleging that Midwestern failed to accommodate his disabilities and, consequently, discriminated against him in violation of the Americans with Disabilities Act and the Rehabilitation Act. (*Id.* at 7–9). Horodner also alleged that Midwestern breached a contract with him by violating its academic policies. (*Id.* at 9–10).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

Although the Court construes the facts alleged in the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true, *Shwarz*, 234 F.3d at 435, the Court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

### A. Americans with Disabilities Act (ADA) and Rehabilitation Act

Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). Discrimination under the ADA includes

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

*Id.* § 12182(b)(2)(A)(ii). Postgraduate private schools are considered public accommodations under the ADA. *Id.* § 12181(7)(J). The ADA defines a "qualified individual with a disability" as one who "with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for . . . participation in [a given] program[] . . . provided by a public entity." *Id.* § 12131(2).

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). A "program or activity" under the Rehabilitation Act includes "a college, university, or other postsecondary institution." *Id.* § 794(b)(2)(A). "With respect to postsecondary and vocational education services," a qualified handicapped person is "a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity." 45 C.F.R. § 84.3(*l*)(3).

To establish a prima facie case of discrimination under the ADA or the Rehabilitation Act, Horodner's complaint must allege facts showing that (1) he is "disabled" within the meaning of the Acts, (2) he is "otherwise qualified" to remain a

student at Midwestern, (3) he was dismissed solely because of his disability, and (4) Midwestern receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *See Wong v. Regents of Univ. of Cali.*, 410 F.3d 1052, 1058 (9th Cir. 2005); *Zukle v. Regents of Univ. of Cali.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

Midwestern does not presently contest that Horodner has alleged facts sufficient to meet elements (1) and (4) set forth above. Midwestern instead argues that it provided Horodner with reasonable accommodations, and Horodner was not qualified to remain in the program. (Doc. 6 at 6, 9).

### 1.   Adequacy of Accommodations

First, Midwestern argues that it provided Horodner with reasonable accommodations for his disabilities and that his additional requested accommodations were unreasonable. (*Id.* at 6).

Although Midwestern granted Horodner's request for additional time to complete his exams, Horodner's complaint alleges that he required additional lab time and time with a lab instructor because "[t]he instructors often rushed through the material, and [he] had difficulty seeing and hearing them." (Doc. 5-1 at 4). Midwestern argues that Horodner never made it aware that his disabilities caused him not to see or hear effectively and never requested accommodations related to his sight or hearing. (Doc. 6 at 6–7).

A court determining whether a requested accommodation is reasonable must do so based on the totality of circumstances. *Zukle*, 166 F.3d at 1048. Viewing the complaint and attached exhibits in the light most favorable to Horodner, the Court does not read the complaint to allege that Midwestern failed to accommodate vision and hearing impairments of which it was unaware. Rather, the complaint alleges that under the circumstances presented in the lab, Horodner's disabilities—which presented "continued challenges with . . . listening comprehension and auditory processing"—prevented him from grasping the material presented. (Doc. 5-1 at 7, 13). Accordingly, accepting

Horodner's allegations in the light most favorable to him at this pleading stage of the case, the Court rejects Midwestern's argument that the requested accommodations were unrelated to his disabilities.

Midwestern further argues that it "already sufficiently accommodated" Horodner's disabilities because the complaint and attached exhibits acknowledge that Horodner received certain accommodations for his disabilities and performed well in his first-semester courses. (Doc. 6 at 7). But "[r]easonableness is not a constant. To the contrary, what is reasonable in a particular situation may not be reasonable in a different situation—even if the situational differences are relatively slight." *Zukle*, 166 F.3d at 1048 (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992)). Here, the introduction of a lab component to standard coursework could plausibly be the kind of "relatively slight" situational difference that merits additional or a different set of accommodations.

Midwestern also argues that Horodner's requested additional accommodations were unreasonable because they would fundamentally change the nature of its program. (Doc. 6 at 9, 11). Specifically, Midwestern argues that Horodner's "additional [requested] accommodations would have allowed [Horodner] a significant unfair advantage over his peers and would substantially alter the approved curriculum and sacrifice the integrity of the program." (Doc. 6 at 9). Considering only the complaint and the attached exhibits, however, the Court cannot reach this conclusion. Although Midwestern correctly notes that "[d]eference is . . . appropriately accorded an educational institution's determination that a reasonable accommodation is not available," the Court accords this deference when considering the facts of a particular case. *See id.* To defer to the assertions in Midwestern's motion to dismiss would absolve it of its "real obligation . . . to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation." *See id.* (quoting *Wynne*, 932 F.2d at 25–26).

Finally, Midwestern argues that Horodner fails to allege that his requests for

accommodations after his iPad was stolen were related to his disabilities. (Doc. 6 at 9). Horodner's complaint alleges that "Horodner reported the theft and the health issues he was experiencing and requested an extension of a few days," and after Midwestern denied the request, he had to take the exam while "he was suffering from serious health issues and disabilities that rendered him mentally incapacitated." (Doc. 5-1 at 5). The email Horodner sent to Midwestern requested an extension because he was experiencing "emotional turmoil" after the theft and that additional time to prepare for the exam would allow him "to gather [himself] mentally and hopefully recover [his] items." (*Id.* at 29). Midwestern correctly notes that the email does not explain that any emotional turmoil is the consequence of Horodner's disabilities rather than the consequence of having a crucial piece of learning equipment stolen shortly before a final exam. (Doc. 6 at 9). By that point, however, Midwestern had long since had information regarding Horodner's disabilities, including that the disabilities caused Horodner "generalized anxiety" and "panic" that affect his educational performance. (Doc. 5-1 at 13). Viewing the complaint and exhibits in the light most favorable to Horodner, the Court finds a sufficient factual basis exists to support a plausible claim that Midwestern failed to accommodate Horodner's disabilities.

### 2. Qualified Individual

Midwestern next argues that Horodner's complaint fails to allege facts sufficient to establish that he is a "qualified individual" under the ADA and Rehabilitation Act. (Doc. 6 at 9). The Court disagrees.

The complaint alleges that Horodner performed well in his educational career before attending Midwestern and on his Pharmacy College Admissions Test—indeed, well enough that Midwestern decided to admit Horodner to its College of Pharmacy. (Doc. 5-1 at 3). The complaint also alleges that Horodner succeeded academically while receiving accommodations during his first semester at Midwestern, earning As and Bs. (*Id.*). These allegations permit an inference that Horodner was an otherwise qualified individual. *See* 42 U.S.C. § 12131(2); 45 C.F.R. § 84.3(*l*)(3). Contrary to Midwestern's

1 suggestion, the fact that Horodner performed well during his first semester with
2 accommodations does not mean that no additional accommodations could have been
3 required. (Doc. 6 at 10). As discussed above, the introduction of a lab component to
4 Horodner's curriculum could plausibly have created different enough circumstances, such
5 that additional accommodations may have been appropriate. *See Zukle*, 166 F.3d at 1048.
6 Accordingly, dismissal is not appropriate on this ground.

### 3. Summary

In sum, the Court finds that Horodner sufficiently states claims under the ADA and Rehabilitation Act. To be sure, Horodner's complaint could certainly be clearer and more comprehensive. But the complaint, along with the attached exhibits, provide Midwestern with "fair notice" of Horodner's claims, "the grounds upon which [they] rest[]," and states a claim to relief that is "plausible on its face." *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Midwestern's assertion that Horodner simply "lacked the aptitude" to succeed in the College of Pharmacy without "a fundamental alteration" to the program may well be true—or it may not. (Doc. 6 at 8). But the Court cannot assume the facts in Midwestern's favor for the purpose of dismissing Horodner's ADA and Rehabilitation Act claims. Accordingly, Midwestern's motion to dismiss Counts 1 and 2 of the complaint is denied.

### B. Breach of Contract

Under Arizona law, a prima facie case of breach of contract requires a showing of the existence of a contract, a beach of the contract, and resulting damages. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 353 (Ariz. 2016) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). "It is elementary that for an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co. v. Homes & Son Const. Co.*, 542 P.2d 817, 819 (Ariz. 1975).

Here, Horodner does not allege facts sufficient to demonstrate that Midwestern's student policy constitutes a contract. The complaint's attachments include what appear to

be several incomplete screenshots of policy statements from Midwestern's website, and the complaint alleges that "Midwestern's academic policies form a contract between Midwestern and Horodner." (Doc. 5-1 at 9, 24–27). This allegation, however, is a legal conclusion that the Court is not required to accept as true. *See Papasan*, 478 U.S. at 286.

The mere existence of a policy does not create a contract. *See Dvoret v. Maricopa Cnty. Cmty. Colleges*, No. CIV. 03-2133 PHXVAM, 2006 WL 1600132, at *9 (D. Ariz. June 5, 2006). "A statement is contractual only if it discloses 'a promissory intent or [is] one that [a party] could reasonably conclude constituted a commitment by the [other party].'" *Id.* (quoting *Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (Ariz. 1999)). Here, Horodner does not identify any policy language that demonstrates Midwestern's promissory intent, nor does Horodner allege facts demonstrating that he reasonably concluded Midwestern's policy constituted a commitment rather than "merely a description of [its] present policies." *See Demasse*, 984 P.2d at 1143 (quoting *Soderlun v. Public Serv. Co.*, 944 P.2d 616, 620 (Colo. App. 1997)). Accordingly, Horodner has failed to allege facts sufficient to support Count 3 of the complaint, and dismissal is appropriate.

### C. Leave to Amend

Horodner requests leave to amend the complaint to correct any deficiencies the Court identifies. (Doc. 13 at 8). Midwestern argues that the Court should dismiss Horodner's complaint with prejudice because Horodner failed to comply with Local Rule of Civil Procedure ("Local Rule") 15.1(a), which requires a party moving for leave to amend to, among other things, "attach a copy of the proposed amended pleading as an exhibit to the motion." (Doc. 14 at 10).

A court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("Leave to amend should be

granted if it appears at all possible that the plaintiff can correct the defect." (internal quotation and alteration omitted)).

Here, the Court will not dismiss Count 3 of the complaint with prejudice because it appears Horodner can allege additional facts to cure the deficiencies in the complaint. However, because Horodner failed to comply with Local Rule 15.1(a), the Court will deny Horodner's request to amend without prejudice. If Horodner wishes to amend the complaint, he must file a Local-Rule-complaint motion to amend within the deadline to be set by the Court at the Rule 16 conference.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Midwestern's motion to dismiss (Doc. 6) is **GRANTED IN PART AND DENIED IN PART** as specified above.

**IT IS FURTHER ORDERED** that Horodner's request for leave to file an amended complaint (Doc. 13) is **DENIED** without prejudice.

Dated this 23rd day of December, 2020.

*[signature]*
James A. Teilborg
Senior United States District Judge