**Julia S. Acken - 021646**
jacken@jsslaw.com
**Dina G. Aouad - 036249**
daouad@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mathew Horodner,<br><br>  Plaintiff,<br><br>  vs.<br><br>Midwestern University,<br><br>  Defendant. | No. CV-20-1800-PHX-JAT<br><br>**DEFENDANT MIDWESTERN UNIVERSITY'S MOTION FOR RECONSIDERATION**<br><br>(Hon. James A. Teilborg) |

Defendant Midwestern University ("Midwestern" or the "University") respectfully requests that the Court reconsider that portion of its Order, filed September 21, 2022 (Dkt. 74) (the "Order"), denying in part, Midwestern's Motion for Summary Judgment (Dkt. 63) ("Motion"). Although there is substantial overlap between Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.* ("Title II") and Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.* ("Title III"), there are also key differences. One key difference between the Titles is the standard for determining whether a defendant failed to reasonably accommodate a disabled individual under the law. In this case, the Court, guided by Plaintiff Mathew Horodner's Response (Dkt. 66) applied the incorrect standard for determining whether Midwestern failed to reasonably accommodate Horodner. Under the applicable standard, Midwestern is entitled to summary judgment on Horodner's ADA and Rehabilitation Act claims because Midwestern has shown, as a matter of law, that Plaintiff will not be able to satisfy his ultimate burden to show that the proposed accommodations were necessary and reasonable. This motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Plaintiff, Mathew Horodner, has asserted three claims against Midwestern: (1) violation of Title III of the ADA; (2) violation of the Section 504 of the Rehabilitation Act (the "Rehabilitation Act"); and (3) promissory estoppel. (Dkt. 63 at 1:23-27) In the Order, the Court entered judgment in favor of Midwestern on the promissory estoppel claim, but found that a genuine issue of material fact existed with respect to Plaintiff's ADA and Rehabilitation Act claims. (Dkt. 74 at 14:8-11; 17:25-26; 21:10-11) Midwestern requests that the Court reconsider its decision regarding Horodner's two discrimination claims.

## I. Reconsideration is Appropriate Due to Clear Legal Error.

Motions for reconsideration should be granted only in rare circumstances. *See Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Midwestern asserts that the second element – clear error – applies in this matter.

The Ninth Circuit has held, "[c]lear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (*quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The Court in *Smith* held further that a failure to apply controlling Supreme Court precedent was "clear error of law." *Smith*, 727 F.3d at 955.

District Courts within the Ninth Circuit also have looked to Black's Law Dictionary, stating that "[a] manifest error of fact or law must be one 'that is plain and

2

1 indisputable, and that amounts to a complete disregard of the controlling law or the
2 credible evidence in the record.'" *See, e.g.*, *In re Wahlin*, 2011 WL 1063196, at *2
3 (Bankr. D. Idaho March 21, 2011) (*quoting In re Oak Park Calabasas Condo. Ass'n*,
4 302 B.R. 682, 683 (Bankr.C.D.Cal.2003)). Mere disappointment of a losing party,
5 however, does not constitute "clear error" sufficient to support a motion for
6 reconsideration. *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp.,*
7 *Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012).

## II. Legal Analysis.

In its Order, the Court separates the accommodations Horodner allegedly requested according to the courses for which he requested them: Pharmaceutics II and IS-IV. With respect to Pharmaceutics II, the Court found that Horodner had requested, (1) additional lab time; (2) time with an instructor; and (3) tutoring. (Dkt. 74 at 9:2-5) The Court found that Horodner also requested the following for his IS-IV course: (1) an extension under the "In-Progress Grade Policy" and (2) a request for medical leave. The Court made a clear error of law, however, by failing to apply the standards outlined in *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682, 121 S. C5. 1879, 149 L.Ed. 2d 904 (2001), and subsequent case law, to this matter.

In his Response, Horodner relied largely on cases analyzing Title II of the ADA, including *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999), to outline the elements of a claim for failure to accommodate under the ADA. (Dkt. 66 at 10:28-11:4) The Order adopts much of Horodner's analysis, and provides:

> For failure to accommodate claims, four elements must be proven: 1. The plaintiff is a disabled individual under the Acts, 2. He is "otherwise qualified to remain a student at the Medical School, i.e. []he can meet the essential eligibility requirements of the school, with or without reasonable accommodation, " 3. He was dismissed solely because of his disability, and 4. The school receives federal financial assistance or is a public entity.

(Dkt. 74 at 6:13-18) (*citing Zukle, supra*). Although the *Zukle* case is probative with respect to certain aspects of a claim under Title III or the Rehabilitation Act, two years after the *Zukle* decision was issued, the U.S. Supreme Court examined the elements

3

necessary to establish a disability claim based upon failure to accommodate under Title III in *Martin*, 532 U.S. at 682, 121 S. Ct. 1879, 149 L.Ed. 2d 904 (2001). In *Martin*, the Court held:

> [t]he question whether petitioner has violated [Title III's rule prohibiting discrimination] depends on a proper construction of the term "discrimination," which is defined by Title III to include: 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications *are necessary* to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…'

(*quoting* 42 U.S.C. § 12182(a).) (Emphasis added.)

Based on the Court's analysis in *Martin*, subsequent courts, including the Ninth Circuit, have also concluded that, to establish a claim under Title III of the ADA, the plaintiff has the ultimate burden to prove that a proposed accommodation was both "necessary" to enable him or her to enjoy and experience the curriculum fully, and reasonable. Indeed, in *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004), the Court explained:

> An individual alleging discrimination under Title III must show that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

(*citing Martin*, 532 U.S. at 683 n. 38, 121 S.Ct. 1879; *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir.2003); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir.1999); 42 U.S.C. §§ 12182(a) and (b)(2)(A)(ii).) "If the plaintiff makes such a showing, the defendant must make the requested modification unless it proves that doing so would alter the fundamental nature of its business." *See Fortyune*, 364 F.3d at 1082 (*citing Martin*, 532 U.S. at 683 & n. 38, 121 S.Ct. 1879).

Similarly, in *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019), the court analyzed the *Martin* decision and stated that, "[t]he Supreme Court has explained that this provision 'contemplates three inquiries': (1)

whether the requested modification is 'necessary' for the disabled individual; (2) whether it is 'reasonable'; and (3) whether it would 'fundamentally alter the nature of the public accommodation.'" (*quoting Martin*, 532 U.S. at 683 n.38, 121 S.Ct. 1879.)

Courts apply this same three-part analysis to claims under the Rehabilitation Act. For example, in *Berardelli v. Allied Servs. Inst. Of Rehab. Med.*, 900 F.3d 104, 123 (3d Cir. 2018), the court, which compared *Martin* to another U.S. Supreme Court case, *Alexander v. Choate*, 469 U.S. 287, 105 S. Ct. 105 (1985), held "claims alleging failure to accommodate under the [Rehabilitation Act] involve the same tripartite inquiry as those under the ADA: (1) whether the requested accommodation is reasonable; (2) whether it is necessary; and (3) whether it would fundamentally alter the nature of the program." (*comparing Choate*, 469 U.S. at 300–01, 105 S.Ct. 712 (RA), with *Martin*, 532 U.S. at 683 n.38, 121 S.Ct. 1879 (ADA).)

In the Order, however, the Court omits the required analysis of whether Horodner created a triable issue of fact with respect to whether his proposed accommodations were "necessary."

**A.   Horodner has not met his burden to create a triable issue of fact regarding whether the accommodations he requested for Pharmaceutics II were "necessary" and "reasonable."**

1. **Extra lab time with an instructor was not "necessary."**

Under Title III of the ADA and the Rehabilitation Act, Horodner has the burden of establishing that his requested accommodations are both "necessary" and "reasonable." This issue was addressed in *Murphy v. Bridger Bowl*, 150 F. App'x 661, (9th Cir. 2005). *Murphy* involved a disabled skier that requested to have her husband accompany her on a ski bike. The court held that the plaintiff did not raise a genuine factual dispute as to her Title III claim because she failed to produce sufficient evidence to show that her proposed accommodation was "necessary." *Murphy*, 150 F. App'x at 663. The court explained that "[u]nder Title III of the ADA, a place of public accommodation need not make a reasonable modification unless it is necessary to provide an individual with a disability full and equal enjoyment of its goods, services,

5

1 facilities, privileges, advantages, or accommodations." *Id.* (quoting 42 U.S.C. § 2 12182(a), (b)(2)(A)(ii)).

3 As Midwestern stated in its Motion and Reply, it is uncontested that, while 4 Horodner failed Pharmaceutics II the first time he took the course, he passed the lab 5 portion of the course (Dkt. 63 at 5:25, Dkt. 70 at 6:20-26) without additional lab 6 sessions with an instructor. He subsequently passed the entire course, including the lab 7 portion, the second time he took the course, despite not having additional lab sessions 8 with an instructor. (Dkt. 63 at 7:20-22, Dkt. 70 at 6:20-26) As such, his requested 9 accommodations were not "necessary."

10 The Court addressed Midwestern's argument that the additional lab time was 11 not "necessary" only once in its Order. The Order cites an argument from Horodner's 12 Response, stating, "[r]esponding to the claim that the accommodations were 13 unnecessary because he initially passed the lab component of Pharm. II and ultimately 14 passed the course, Horodner suggests that, at the time, the request was reasonable 15 because past performance suggests little about how well a student will do on 16 subsequent exams." (Dkt. 74 at 13:25-28) (*citing* Dkt. 66 at 13 (*citing Dean v. Univ.* 17 *at Buffalo Sch. Of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2nd Cir. 2015))).

18 As an initial matter, as discussed above, to establish a claim under Title III, 19 Horodner has the ultimate burden of proof to establish that his proposed 20 accommodations were both necessary *and* reasonable. Although the Order discusses 21 Midwestern's argument in the context of whether the accommodations were 22 "reasonable," (Dkt. 74 at 13:25-28), Midwestern asserted that Horodner's lab-related 23 requests were not *necessary*. Indeed, this matter is distinguishable from *Dean.* First, 24 *Dean,* like *Zukle*, involves a claim under Title II of the ADA, rather than Title III. In 25 fact, the court in *Dean* was not analyzing whether the proposed accommodation 26 (additional study time) was "necessary," but rather, whether the proposed 27 accommodation was "reasonable." *Dean, supra*. In addition, there is a crucial 28 difference between the facts in *Dean* and the facts in the current matter. The student in

6

1 *Dean* had three opportunities to pass a required examination. He had taken a "study
2 leave" to study for the exam before his first and second attempts, but failed the exam
3 both times. *Supra* at 182-83. The school subsequently denied him a study leave prior
4 to his third attempt at the exam, arguing in part that the leave was not a "reasonable"
5 accommodation because it was unlikely to be effective, since it had not been effective
6 the first two times. *Id.* at 183-84. On review, the appellate court indicated that the fact
7 Dean had failed the exam the first two times following "study leaves," was not
8 probative as to whether a third study leave would be effective. *Id.* at 185.

9 Unlike the school in *Dean*, however, Midwestern based its argument on the fact
10 that Horodner had *passed* his labs the first time he took Pharmaceutics II, which
11 indicated that he already had equal access to the lab curriculum without the additional
12 lab time. Indeed, Horodner subsequently passed the lab portion of the course again
13 when he retook Pharmaceutics II, which supports Midwestern's position that the
14 additional lab time was not "necessary." Given the above, Horodner has failed to
15 produce any evidence to meet his burden under Title III of the ADA and the
16 Rehabilitation Act to establish a genuine issue of material fact with respect to whether
17 lab time with an instructor was "necessary" for him to have full and equal enjoyment
18 of the curriculum in Pharmaceutics II.

### 2. Horodner did not show that tutoring was "necessary" or "reasonable."

Horodner also cannot create a triable fact issue as to whether "tutoring" was necessary or reasonable. The Order identifies "tutoring" as one of Horodner's proposed accommodations for Pharmaceutics II. (Dkt. 74 at 9:2-7) As the Order also states, however, to the extent Horodner mentioned tutoring at all, he identified it in relation to "IS," rather than Pharmaceutics II. (Dkt. 74 at 10:3-5) As Midwestern explained in its Motion, Pharmaceutical students have to take several "IS" classes. Indeed, by the time Horodner took IS-IV, he already had taken and passed IS-I, IS-II, and IS-III. (Dkt. 63 at 7:23-28)

7

As discussed above, under *Martin* and its progeny, a plaintiff alleging that he was denied a reasonable accommodation has the initial burden of establishing that he requested an accommodation and that the accommodation was necessary *and* reasonable. To meet this burden, a plaintiff must do more than simply make a general statement that a certain accommodation may be of assistance. For example, in *Murphy v. Bridger Bowl*, the court found that the plaintiff had failed to create a triable issue of fact regarding whether her requested accommodation to have her husband ride on a ski bike with her was "reasonable," because, while she had presented documentation from a professional regarding her disability, the documentation did not specifically identify having her husband ride on her ski bike with her as an accommodation that would assist her with her disability. *Murphy*, 150 Fed. App's at 663. The Fifth Circuit examined this issue in *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). In *Johnson*, the court explained that:

> [t]he plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable. The plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases.

116 F.3d at 1059. The court explained further,

> the type of evidence that satisfies this burden focuses on the specifics of the plaintiff's or defendant's circumstances and not on the general nature of the accommodation. Under the statutory framework, such evidence is relevant only to a fundamental alteration defense and not relevant to the plaintiff's burden to show that the requested modification is reasonable in the run of cases.

116 F.3d at 1059-60. As the Court states in its Order, Horodner simply mentioned in an e-mail message that he may want a tutor "for courses like IS." (Dkt. 74 at 10:4-5) It is uncontested that Horodner did not make any attempt to explain what type of tutoring he may want (individual or group tutoring), how tutoring might help him in Pharmaceutics II, IS-IV, or any other class, or what relation tutoring might bear toward his disability. Accordingly, Horodner cannot create a triable fact issue regarding whether Midwestern violated Title III or the Rehabilitation Act by declining to provide

8

1  Horodner "tutoring."

### B. Horodner failed to notify Midwestern of his new, allegedly "exacerbated" disability and could not, therefore, meet his burden of presenting an accommodation that was necessary and reasonable.

An omission or misstatement of material fact also can constitute clear error for purposes of a motion for reconsideration. In the Order, the Court found that a genuine issue of fact existed as to whether Midwestern should have modified its "In-Progress" grade policy and/or its "Medical Leave" policy to allow Horodner additional time to take the cumulative re-examination. (Dkt. 74 at 17:25-26) Both Horodner and the Order refer frequently to "exacerbations" of Horodner's pre-existing disabilities when analyzing whether Midwestern was required to provide Horodner with additional time to take the course re-examination. (Dkt. 74 at 14:18-20, 16:15-16, 16:28; Dkt. 66 at 4:24-25, 5:6-7, 6:4-5) Although the Court acknowledges in its Order that the documentation Horodner had on file with Midwestern indicated that he would *not* experience "crisis episodes," (Dkt. 74 at 14:16-22) the Order indicates that Horodner still raised an issue of fact regarding whether Midwestern knew that his disabilities had been "exacerbated" due to e-mail messages that Horodner sent to an instructor and an administrator. (Dkt. 74 at 14-20).

The Court's Order, however, relies on a material misstatement of fact sufficient to constitute "clear error." The e-mails that Horodner claims placed Midwestern on notice of his "exacerbated disability," were sent to Dr. Tennant and Dr. Buckley. (Dkt. 63-2 at 136-38) It is uncontested that Midwestern's Student Services maintains all information related to a student's specific disabilities confidential. (Dkt. 63 at 3:8-9) Neither Dr. Tennant nor Dr. Buckley works within Student Services. As such, they had no reason to know, and did not know, the nature of Horodner's disabilities, or what impact the alleged "exacerbation" may have had on those disabilities. As such, even if Horodner could show that the alleged "exacerbation" of his disabilities entitled to him to new or different accommodations, these e-mail messages do not establish that

9

Midwestern was on "notice" that Horodner's specific disabilities had been, or could be, "exacerbated" in this manner. Without notifying Midwestern of the nature of his alleged new, "exacerbated" disability, Horodner necessarily could not satisfy his burden of identifying an accommodation that was both "necessary" and "reasonable."

### III.    Conclusion.

As outlined above, the Court's Order with respect to Plaintiff's ADA and Rehabilitation Act claims relies in large part on Horodner's assertions regarding the steps necessary to establish his claims. Those assertions, however, rely almost entirely on case law pertaining to Title II of the ADA, rather than Title III. Under case law pertaining to Title III of the ADA, Midwestern has established that no genuine issue of material fact exists related to Horodner's ADA and Rehabilitation Act claims. Accordingly, based upon the foregoing, Defendant Midwestern University respectfully requests that the Court reconsider the portion of its Order, in which the Court denied Midwestern's Motion for Summary Judgment with respect to Horodner's claims under the ADA and Rehabilitation Act.

Respectfully submitted this 5th of October, 2022.

JENNINGS, STROUSS & SALMON, P.L.C.

By  s/ Julia S. Acken
    Julia S. Acken
    Dina G. Aouad
    Attorneys for Defendant